IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT NASH and JEFFREY PEPPER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>PERCHERON PROFESSIONAL SERVICES, LLC,<br><br>Defendant. | Case No.: **17 CV 6718** MAT<br><br>*JURY TRIAL DEMANDED* |

## COMPLAINT

Plaintiffs Robert Nash and Jeffrey Pepper, by and through their undersigned attorneys, state as follows:

### NATURE OF THE ACTION

1.  This class action case arises out of the systemic unlawful treatment of Plaintiffs and other similarly situated former Right of Way Agents ("ROW Agents") who worked for Mason Dixon Energy LLC ("Mason Dixon") on gathering line and pipeline projects within or based out of New York.

2.  Plaintiffs allege that they and other ROW Agents throughout New York and surrounding states that: (i) were misclassified as exempt from the overtime protections of the New York Labor Law ("NYLL"); (ii) are entitled to unpaid wages from Defendant for work performed for which they did not receive any compensation as well as overtime work for which they did not receive any overtime premium pay as required by law; and (iii) are entitled to liquidated damages pursuant to the NYLL.

## THE PARTIES

3. Plaintiff Robert Nash is an adult individual residing at 1856 County Road 2250 North, Cisne, Illinois 62823. Nash worked for Mason Dixon from March 2010 to February 29, 2012 and November 25, 2012 to January 1, 2014. From September 2011 through the remaining portions of his employment with Mason Dixon, Nash reported to Mason Dixon's field office in Elmira, New York.

4. Plaintiff Jeffrey Pepper is an adult individual residing at 30 Maple Drive, Canton, Pennsylvania 17724. Pepper worked for Mason Dixon starting in 2008 and continuing until January 1, 2014. From September 2011 through the end of his employment with Mason Dixon, Pepper reported to Mason Dixon's field office in Elmira, New York.

5. Defendant Percheron Professional Services, LLC is a Delaware limited liability company with its principal place of business located in Katy, Texas. Defendant maintains its corporate headquarters at 1904 West Grand Parkway N., Suite 200, Katy, Texas 77449.

6. In 2015, Percheron Professional Services, LLC was formed as a result of the merger of three related entities, including Mason Dixon, and is therefore a successor in interest to those entities.

7. Upon information and belief, Percheron Professional Services, LLC continued all of the business and operations of Mason Dixon following the merger.

8. Upon information and belief, Defendant has assumed responsibility for all preexisting liabilities of Mason Dixon, including Plaintiffs' claims in this action, pursuant to agreements associated with its formation.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over the subject matter of Plaintiffs' state law claims under 28 U.S.C. § 1332 in that the parties in the Complaint are of diverse citizenship, and the amount in controversy between the Plaintiffs and Defendant exceeds $75,000 exclusive of interest and attorneys' fees.

10. This Court has personal jurisdiction over the Defendant, because Defendant is a company having sufficient minimum contacts with the Western District of New York so as to render the exercise of jurisdiction over the Defendant by this Court consistent with traditional notions of fair play and substantial justice.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BASIS FOR PLAINTIFFS' CLAIMS

12. During the time period from 2011 through 2013, Mason Dixon provided contract land services to oil and gas exploration and production companies in the United States. As part of these services, Mason Dixon hired ROW Agents to interact with landowners on behalf of Mason Dixon's clients. Both Nash and Pepper worked for Mason Dixon as ROW Agents.

13. In June 2012, Mason Dixon merged its operations with two other land services providers, OGM Land, LLC and Percheron Acquisitions, LLC, under the common ownership of a new company known as Percheron Holdings, LLC. Each of the three combined companies retained their separate legal status and became wholly owned subsidiaries of Percheron Holdings, LLC. Upon information and belief, following the merger in June 2012, Mason Dixon continued its existence and operations but began doing business under the name Percheron Energy, LLC.

14.     On gathering line and pipeline projects, ROW Agents act as the liaison between the landowners and the pipeline companies. ROW Agents perform a variety of tasks in pursuit of the ultimate goal of running a pipeline across a stretch of land, including: researching title to determine ownership of a property; obtaining permission to survey a property; monitoring survey crews while they conduct surveys (e.g., civil, environmental, cultural) on a property; negotiating the acquisition of an easement across a property; and monitoring construction of the pipeline on a property. Nash and Pepper performed all of these duties while working for Mason Dixon. Upon information and belief, all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014 performed some or all of these duties.

15.     ROW Agents working on gathering line and pipeline projects typically work six days per week (sometimes referred to as a "six-day ticket"). Nash and Pepper both worked six-day tickets. Upon information and belief, all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014 worked six-day tickets.

16.     Nash and Pepper were paid a single rate for each day worked, which is often referred to as a day rate. Upon information and belief, all ROW Agents hired by Mason Dixon were also paid a day rate. Upon information and belief, the day rate paid to Nash and Pepper, as well as all other ROW Agents working for Mason Dixon, was only intended to compensate them for eight hours of work.

17.     Nash was paid a day rate of $300 between October 2011 and February 29, 2012, and a day rate of $325 for the remaining periods he worked for Mason Dixon. Nash was required to work six days per week while working for Mason Dixon.

18.     Pepper was paid a day rate of $290 between October 2011 and August 31, 2012, a day rate of $315 from September 4, 2012 until April 15, 2013, and a day rate of $350 from April

4

5196273

16, 2013 until January 1, 2014. Pepper was required to work six days per week while working for Mason Dixon.

19. Plaintiffs both worked on multiple gathering line projects for a single client of Mason Dixon, who at one time was named Appalachia Midstream Services, LLC, In 2011, Appalachia Midstream Services, LLC ("Appalachia Midstream") was acquired by Access Midstream Partners, L.P. ("Access Midstream"). As of September 2011, the Mason Dixon field office was located in Elmira, New York, and the Appalachia Midstream / Access Midstream field office was located in Horseheads, New York. Plaintiffs regularly reported to the Mason Dixon field office in Elmira, New York.

20. Upon information and belief, all ROW Agents previously working for Mason Dixon in 2013 stopped working for Mason Dixon on January 1, 2014 and instead became employed by a sister company, Percheron Field Services, LLC.

21. Upon information and belief, Mason Dixon did not pay its ROW Agents overtime rates for any time worked over 40 hours each workweek.

22. Nash worked on average between 65 and 75 hours per week while working for Mason Dixon.

23. Pepper worked on average 48 hours per week while working for Mason Dixon from 2011 through May 2013 and September 2013 through January 1, 2014. From June 2013 through August 2013, Pepper worked on average between 60 and 72 hours per week. During this time period, Pepper would also occasionally work additional hours in the evenings each week in order to meet with landowners, construction contractors and/or local or county officials.

24. Mason Dixon never paid Plaintiffs any overtime compensation.

25. Plaintiffs were also occasionally required to work on Sundays and were not compensated for this time.

26. Mason Dixon misclassified Plaintiffs as independent contractors and therefore considered them exempt from the overtime requirements of the NYLL. Upon information and belief, this was true for all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014.

27. Mason Dixon did not pay Nash and Pepper a minimum-guaranteed salary. Upon information and belief, this was true for all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014.

28. Although Nash and Pepper had a number of job duties, as outlined above, those responsibilities required no technical or specialized skills and no capital investment. Upon information and belief, this was true for all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014.

29. Nash and Pepper did not have any managerial responsibilities, and they did not have the authority to hire or fire other employees or to make recommendations concerning the hiring or firing of other employees. Upon information and belief, this was true for all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014.

30. In reality, Nash and Pepper, did not exercise any independent judgment in carrying out their duties for Mason Dixon, which were instead dictated and monitored by their field supervisors based on directives from Mason Dixon project managers and Mason Dixon's client. Upon information and belief, this was true for all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014.

31.     The job duties of Nash and Pepper did not relate directly to Mason Dixon's management policies or general business operations. Upon information and belief, this was true for all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014.

32.     Nash and Pepper did not have the authority to formulate policy or operating procedures. Upon information and belief, this was true for all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014.

33.     Nash and Pepper did not have the authority to negotiate on behalf of or bind Mason Dixon or Mason Dixon's client on significant matters, except within the narrow confines of authority previously approved by Mason Dixon's client. Upon information and belief, this was true for all ROW Agents working for Mason Dixon in or based out of New York between October 2011 and January 1, 2014.

34.     Upon information and belief, Mason Dixon willfully and deliberately misclassified the ROW Agents as independent contractors exempt from the overtime provisions of the NYLL.

35.     Although Mason Dixon classified the ROW Agents as independent contractors, the nature of the business relationship between Mason Dixon and the ROW Agents demonstrate that Mason Dixon had an employment relationship with the ROW Agents under the NYLL:

    a.     The work performed by the ROW Agents was integral to Mason Dixon's business;

    b.     The ROW Agents enjoyed little opportunity to increase profit or avoid loss exercise any managerial skills as part of their work for Mason Dixon;

  c. The ROW Agents did not make any investment necessary to perform their duties for Mason Dixon;

  d. The ROW Agents reported to Mason Dixon supervisors who monitored their progress and the quality of their work;

  e. Mason Dixon set pay amounts and work assignments of the ROW Agents.

36. During the relevant time period, Mason Dixon was well aware that the ROW Agents worked at least 48 hours per week.

37. Mason Dixon failed to maintain accurate and sufficient time records for the ROW Agents, including the Plaintiffs.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs seek to proceed as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class of persons:

> All persons working for Mason Dixon Energy, LLC as Right of Way Agents on gathering line and pipeline projects within or based out of New York at any time between six years prior to the filing of this complaint and January 1, 2014.

39. The putative class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number would be based are presently within the sole custody and/or control of the Defendant, upon information and belief, Mason Dixon employed over 50 ROW Agents on gathering line and pipeline projects within or based out of New York between October 2011 and January 1, 2014.

40. Upon information and belief, a number of ROW Agents have left employment with Mason Dixon between October 2011 and January 1, 2014. Most of these ROW Agents

would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

41. Plaintiffs will fairly and adequately protect the interests of the putative class and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with those of the putative class.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, the rapid turnover rate of ROW Agents on the Appalachia Midstream project suggests that the damages suffered by some of the individual class members may be relatively small, and the expense and burden of individual litigation would make it virtually impossible for these class members to individually seek redress for the wrongs done to them.

43. Common questions of law and fact predominate in this action because Mason Dixon acted on grounds generally applicable to all members. Among the questions of law and fact common to the Plaintiffs and class members are:

    a. Whether Mason Dixon employed the Plaintiffs and class members within the meaning of the NYLL;

    b. Whether Mason Dixon willfully misclassified Plaintiffs and class members as exempt from the overtime provisions of the NYLL;

    c. Whether Mason Dixon failed to pay Plaintiffs and class members for all hours worked and whether they received no overtime compensation for hours worked in excess of forty hours per workweek in violation of the NYLL;

d.      What proof of hours is sufficient where the employer fails in its duty to maintain accurate time records within the meaning of the NYLL;

e.      Whether Mason Dixon is liable for all damages and prejudgment interest claimed hereunder; and

f.      Whether Mason Dixon is liable for costs and attorneys' fees.

44.    Plaintiffs know of no difficulty that might be encountered in the management of this litigation that would preclude its maintenance as a class action.

FIRST CLAIM
(New York Labor Law – Unpaid Wages and Overtime)

45.    Plaintiffs, on behalf of themselves and all class action members, re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

46.    Since at least six years prior to the filing of this Complaint until January 1, 2014, Plaintiffs and class members were employees of Mason Dixon for purposes of the overtime requirements of the NYLL.

47.    Mason Dixon was required to pay Plaintiffs and class members for all work performed by them, including work performed on Sundays. Mason Dixon never paid Plaintiffs or the class members for Sunday work.

48.    Since at least six years prior to the filing of this Complaint until January 1, 2014, Plaintiffs and class members regularly and routinely worked in excess of 40 hours per workweek.

49.    Under the NYLL and supporting New York State Department of Labor Regulations, Mason Dixon was required to pay Plaintiffs one and one-half times the regular rate of pay for all hours they worked in excess of 40 each workweek.

50. During all relevant times, Mason Dixon knowingly and willfully failed to pay uncompensated work time and overtime earned and due to Plaintiffs and class members.

51. Due to Mason Dixon's willful violations of the NYLL, Plaintiffs and class members are entitled to recover their unpaid wages and overtime wages, liquidated damages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated employees, respectfully request that this Court grant the following relief:

1. Certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23, and appointing Plaintiffs as Class Representatives and their attorneys as Class Counsel;

2. Award of unpaid wages, as well as all overtime compensation, due under the NYLL to Plaintiffs and the class members;

3. Award of liquidated damages to Plaintiffs and class members as a result of Mason Dixon's willful failure to pay for all wages due as well as overtime compensation pursuant to the NYLL;

4. Award of pre-judgment and post-judgment interest;

5. Award of costs and expenses of this action together with reasonable attorneys' and expert fees; and,

6. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury in this action.

Respectfully submitted,

Dated: October 16, 2017

_____
Bruce C. Fox, Esq. (Pa. ID No. 42576)
bruce.fox@obermayer.com
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
500 Grant Street, Ste. 5240
Pittsburgh, PA 15219
Tel.: (412) 566-1500

Joseph H. Chivers, Esq. (Pa. ID No. 39184)
jchivers@employmentrightsgroup.com
THE EMPLOYMENT RIGHTS GROUP
100 First Avenue, Suite 650
Pittsburgh, PA 15222
Tel.: (412) 227-0763

*Counsel for Plaintiffs and the Putative Class*

5196273

**17 CV 6718 MAT**

OCT 17 2017

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ROBERT NASH and JEFFREY PEPPER

**(b)** County of Residence of First Listed Plaintiff  Wayne County, IL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bruce C. Fox, Obermayer Rebmann Maxwell & Hippel LLP, 500 Grant St Ste 5240, Pittsburgh, PA 15219 (412) 566-1500; Joseph H. Chivers, The Employment Rights Group, 100 First Ave Ste 650, Pittsburgh, PA 15222

## DEFENDANTS
PERCHERON PROFESSIONAL SERVICES, LLC

County of Residence of First Listed Defendant  Fort Bend County, TX
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Robert W. Pritchard, Littler Mendelson, P.C., 625 Liberty Avenue, 26th Floor, Pittsburgh, PA 15222

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☒ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sec. 1332
Brief description of cause:
Unpaid wages and overtime pursuant to New York Labor Law

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE                              DOCKET NUMBER

DATE: 10/16/2017
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE